## RAILTON v. UNITED STATES.
### No. 9979.

Circuit Court of Appeals, Fifth Circuit.

April 29, 1942.

Rehearing Denied June 2, 1942.

Maury Hughes and J. Forrest Mc-Cutcheon, both of Dallas, Tex., for appellant.

Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., and Joe H. Jones, Asst. U. S. Atty., of Dallas, Tex., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

E. J. Railton was charged jointly with Claude Jordan and Arthur Lee Simpson with conspiracy to steal and carry away property of the United States in violation of Section 82 of Title 18, U.S.C.A., the overt acts charged all relating to the stealing and selling of certain fire clay. In a second count they were charged with actually stealing and carrying away the fire clay. Simpson pleaded guilty and became the chief witness for the prosecution. Jordan pleaded not guilty but did not testify, and was convicted on both counts. Railton vigorously defended himself, and was convicted of the conspiracy but acquitted of the stealing. He, only, appeals.

 The evidence leaves no doubt that the fire clay was stolen and sold pursuant to a plan. The only question is whether Railton was a party to it. According to Simpson's testimony he was, and got part of the money from the sale. If the jury believed Railton was a party to the plan to steal, since the plan was carried out he should have been convicted of the stealing also. This want of consistency is no fatal defect in the verdict, but it has a probable explanation in the admission of evidence to support Simpson's testimony that he, the engineer on a Government park construction project, was engaged in other dishonesties along with Railton, who was a city official on the Park Board. The prosecution was allowed to give evidence of a number of instances, both before and after the taking of the fire clay, in which Railton joined Simpson or Jordan or others in taking for his use material or labor belonging to the city park, and especially of a "rake off" of $1,000 in the purchase of a large asphalt order, as to which the specifications were so altered as to exclude other bidders. These were all denied by Railton, and the greater part of the testimony in the record relates to these collateral contentions. It was of course no function of the federal court to investigate charges of grafting by a State official, and these charges were admitted only for the light they might throw on the federal offenses on trial. We recognize the rule that light may be sought in this way to show motive or intent, or a system of crime, in some cases. Weiss v. United States, 5 Cir., 122 F.2d 675. But it is a fundamental rule of criminal law that guilt of another offense cannot generally be proven to show guilt of the offense charged in the indictment. Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077; Bird v. United States, 180 U.S. 356, 21 S.Ct. 403, 45 L.Ed. 570; Scheinberg v. United States, 2 Cir., 213 F. 757, Ann.Cas.1914D, 1258; Wolf v. United States, 2 Cir., 290 F. 738; Fish v. United States, 1 Cir., 215 F. 544, 545, L.R.A.1915A, 809; Tedesco v. United States, 9 Cir., 118 F.2d 737. This is true even when guilt of the other offense has been established by a conviction, or is admitted. When, as in all the instances in this record, there has been no conviction, there is no admission, but strong denial, and in the main the issue is as to them the same as in the main issue, whether Simpson or Railton is to be believed, confusion rather than light is apt to result. We think it quite likely the jury concluded that Railton was a grafter and was convicted of conspiracy for that reason, but that they were doubtful whether he participated in the stealing of the property of the United States, so they acquitted him of the very transaction which they were authorized to try.

 The district judge limited the purposes for which the collateral evidence was admitted, but we think erred in one part of his charge to the jury about it. He said: "In connection with the evidence offered in support of the indictment the Government has offered you evidence relative to other offenses, alleged offenses of a similar character, such as taking of tile, shrubbery, gravel, and other property that belonged to the city and was being used by the Park Board as was this fire clay. Those items were not the property of the United States, and therefore have no place in this indictment. This evidence has been permitted to be

offered to you to show, if it does, or tend to show if it does, a system of misappropriating and applying property not their own, at and about the time stated in the indictment, and *to render it more probable, if in your findings you believe that it does, that they did appropriate the fire clay* that belonged to the Government. This testimony was admitted for such purpose as I have just described." The italicized words are erroneous. It is logical to conclude, and very apt to be concluded, that because a man was dishonest once he will steal again. It is certainly "more probable" that a crooked official did steal than if he were an upright one. Yet our law forbids these very premises. It cannot be shown that the accused has committed other similar crimes to show that it is probable he committed the one charged. So his general bad character cannot be proven against him for that purpose, but only in reply to his own attempt to show in his defense a general good character. The collateral evidence in this case was admitted as a part of the Government's case in chief. The charge quoted was not directly excepted to, but we think in the circumstances of this case it was so clearly erroneous and harmful that it ought to be ground for a new trial.

As to the admissibility of evidence, the confessions of Jordan will not figure in another trial, and their effect on Railton need not be discussed. Some of the collateral transactions are so closely related to the taking of the fire clay in time, in circumstances, and persons concerned, as to be fairly illustrative of a conspiracy among them to steal park materials, including this fire clay. The bare fact that everything belonged to the city except the fire clay, which was the property of the United States, would not put a wall between them, for would-be thieves often fail to notice true ownership. But there is in this case no question of motive or intent to be illustrated, no claim of a mistaken taking to be rebutted, but only the naked question whether Railton was party to a clearly proven larcenous plan and act. Nor is there any peculiarity of method which might identify him as a perpetrator, which is the usual ground of admitting other transactions in which the accused was clearly or admittedly guilty, as showing system. The asphalt transaction, if true, occurred in November and December, 1937, five or six months before the fire clay was sold. It was a collu-

sion between Simpson, Railton and one Gordon, and the seller of the asphalt, by which the seller was to have a padded price out of which the other three would be paid $1,000. It was, if proven, a fraud on the city, but had no apparent relation to a conspiracy between Railton, Simpson and Jordan to steal park property. We do not think it had such a connection with the matter on trial as to justify its injection. Other things alleged as error we think were not such.

The judgment is reversed, and the case remanded for a new trial in accordance with this opinion.