**UNITED STATES of America ex rel. Ralph STONER, Appellant,**

v.

**David N. MYERS, Superintendent, State Correctional Institution at Graterford, Appellee.**

No. 14612.

United States Court of Appeals Third Circuit.

Submitted Feb. 4, 1964.

Decided March 9, 1964.

---

Kenneth F. Lee, Chambersburg, Eugene F. Waye, Philadelphia, Pa., for appellant.

Jay L. Benedict, Jr., Dist. Atty. of Franklin County, Chambersburg, Pa., for appellee.

Before McLAUGHLIN, GANEY and SMITH, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The district court denied an application for a writ of habeas corpus arising out of a state court conviction for burglary and larceny.

Appellant's first point is founded entirely upon the unwarranted assumption that certain evidence admitted in his trial was obtained by unconstitutional search and seizure. With that as his take

off, he urges that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) be applied retroactively, as it would have to be for the writ to be allowed.

The facts fail to support appellant's premise. On March 19, 1960, the Marine Corps League Clubhouse, Chambersburg, Pennsylvania, was robbed. Taken were fifty odd cartons of cigarettes, a safe containing approximately $600, a metal box with a smaller amount of cash and some bottles of liquor. Sometime afterwards, a truck driver named Mitchell telephoned the wife of the club steward and told her that appellant had tried to induce him to take part in the robbery. The police were given this information and in turn interviewed the truck driver. The latter revealed to them that Stoner had advised him of his plans to rob the Club and asked him to take part. Inter alia Stoner had said to Mitchell that he intended to remove the safe and later leave it in a named pond. The police went to the pond and found the safe. The police knew Stoner was a member of the Club and among the last to leave it the morning of the burglary.

With knowledge of all of the above, the police obtained a warrant to search appellant's premises for "Approximately 50 cartons of assorted brands of cigarettes * * * believed to be * * * concealed in the Stoner Dwelling House and or other buildings of Ralph Stoner * * *." The warrant was not questioned at the trial and there was no appeal from the latter. There is nothing advanced by appellant in any way contradictory of the fact that the police, at the time of the application for the warrant and its issuance, possessed the above noted vital information concerning Stoner in relation to the theft. We must agree with the district court that presumably such information was the basis for the issuance of the warrant, that it constituted probable cause and more than adequately supported the warrant. Dumbra v. United States, 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. 1032 (1925); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960);

United States v. Moriarity, 327 F.2d 345 (3 Cir. 1964).

Armed with the warrant, Officer Armstrong, who had made the investigation, with another officer, went upon the Stoner premises. They walked up the back porch to the back door. They knocked on the door three or four times. They waited around. "No one showed up. We left." Leaving the porch, as the district judge found, "they noticed about three feet from the rear porch on the ground near the path, a pile of concrete particles and coins". The officers took these with them. Appellant, also for the first time, in the district court contended that the evidence was wrongfully obtained. His theory was and is that it was the product of an illegal search. There is nothing in the record to justify this. The officers were rightfully upon appellant's premises, and on the back porch. As they stood there they looked around. Not obtaining any answer to their knocks on the door, they left the porch and while walking away saw the pile of concrete and coins in front of them. These were not concealed in the house or other buildings, as the cigarettes were believed to be in the language of the warrant. They were in plain sight of the officers lawfully leaving the Stoner property.

■ It is true, as appellee urges, that this issue should have been presented on motion for a new trial and should have been a subject for appeal. It is also true that actually habeas corpus is now being used as a substitute for appeal. The excuse suggested is that the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) was filed after appellant's trial. It was therefore asserted in the district court that there had been an illegal search and seizure in this instance and that the Mapp rule, applied retrospectively, controlled. The theory was strongly and conscientiously pressed in the district court and before us. Because of this we prefer to deal with the problem on its merits. On properly found facts, based, according to the agreement of the parties, upon the state court record, the evidence involved was not obtained as the result of wrongful search. We therefore never reach the question of the applicability of the Mapp opinion.

Ellison v. United States, 93 U.S.App. D.C. 1, 206 F.2d 476 (1953) presented a situation markedly similar to the facts before us. There, police officers who suspected defendant of having broken into and robbing a drug store, went to his home, proceeded up to and on the front porch and rang the doorbell. They did not have a search warrant. While waiting on the front porch they observed "several bottles—drug store bottles—of medicine and some cigarettes and other things" lying on the ground near the house. The bottles were of the drug store type and had the appearance of having been recently placed there.

The court held 206 F.2d p. 478:

"Appellant contends that the officers' entry on the premises was a trespass from the moment they stepped on his land, that the viewing of the bottles and cigarettes was an illegal search, and that the product of this illegal search could not be the basis of probable cause. We cannot accept this contention. The officers were perfectly entitled to go to appellant's door, ring the bell, and inquire as to his whereabouts. They were not trespassers in so doing. Nor were they guilty of any impropriety in allowing their eyes to wander while they were waiting on the porch. The bottles and cigarettes were not covered or hidden, though it may have been necessary to bend over the porch rail to see them. There was no intrusion into appellant's privacy. Nor did mere observation constitute a 'search.' If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring

a police officer to free his mind of clues lying flatly before him."

See also Hester v. United States, 265 U.S. 57, 58–59, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Joseph, 174 F.Supp. 539, 545 (E.D.Pa.1959), affd. 278 F.2d 504 (3 Cir. 1960), cert. den. 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960); United States v. Rogato, 39 F.2d 171 (M.D.Pa.1930).

None of the citations offered by appellant contravenes the above. All of them concern lack of probable cause, invalid warrants or searches of buildings (in one instance an automobile) without warrants where the officers were not lawfully on the premises. Admittedly the evidence involved in this appeal was exposed to plain view out in the open; as the appellant states in his brief "The concrete insulating materials were found on and taken from the ground within three or four feet of relator's back door." The over-all factual situation as rightfully found by the trial judge affords no reasonable ground for declaring the evidence the product of unlawful search and seizure.

Appellant also argues that the admission into evidence of his criminal record should result in the writ of habeas corpus being granted.

The only trial objection to the admission of the record had been that it should only be used with reference to defendant's credibility. The judge at first refused to so confine the exhibit. He later reversed this ruling and stopped the prosecutor's general use thereof on summation. At that time the judge said:

" * * * the jury is instructed, as we will instruct a little later again, the evidence just referred to as regards the defendant or another witness as to previous convictions is admitted only as it bears on the issue of the credibility, the believability, of the witness, and not with regard to the issue of guilt or innocence on the charge before us."

In addition, the court after that fully and affirmatively charged the jury that the criminal record was before it merely as bearing on the credibility of the defendant. He said:

"Now, there was presented in evidence the record in the criminal courts of the county with regard to the witness Mr. Mitchell and also with regard to the defendant, and we emphasize to you what has already been said, that under our law it is improper and unlawful and prejudicial to introduce in evidence, in regard particularly to a defendant, a record of previous convictions or other conflict with the law for the logical reason that it leads the jury's attention away from the specific issue that is now before the Court, and it is unfair to hold a man continuously responsible for something that he has already presumably been convicted of and paid his debt to society for, and the jury could easily be misled later on in convicting him again and again if they didn't have anybody else around that could be charged or convicted for a new offense merely on the basis that he had committed some offense at an earlier time, and that is what we have to guard against. However, it is lawful under our system to show if a defendant has been, or any other witness—and the defendant when he testifies becomes a witness—to show that he was convicted at earlier times of criminal offenses, particularly felonies, and that is the class of offense that all the incidents related here to you, in both cases, I believe, fall into—felonies—offered for the purpose only of attacking the credibility of the witness; that means his believability; so that in weighing the testimony of such a witness where such conviction or convictions of former times were offered, you could weigh that fact in the scales in order to decide what weight ought to be given to the present testimony of such a witness.

And that is the only subject upon which you are to consider the fact of such evidence offered to you from the dockets of the Clerk of the Court as to former convictions, and not to consider it on the main issue that's before you here of the guilt or innocence of the defendant of the crimes charged."

As is seen, the mistake was properly *and* completely remedied. There is no indication that any fundamental unfairness resulted. On this point also there was no post trial motion or appeal. From the entire circumstances surrounding it we hold with the district court that it " * * * does not raise a question of constitutional dimension and is not a proper subject for relief under federal habeas corpus."

The judgment of the district court will be affirmed.