**Jerry ST. JOHN, Petitioner-Appellee,**

v.

**W. J. ESTELLE, Jr., Director, Respondent-Appellant.**

**No. 76–1178.**

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1977.

Marianne Wesson Cantrick, Asst. Atty. Gen., John L. Hill, Atty. Gen., Richel Rivers, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Ray J. McQuary, Staff Counsel for Inmates, Darrington Unit, Rosharon, Tex., Ken Anderson, Staff Counsel for Inmates, Huntsville, Tex., for petitioner-appellee.

Before BROWN, Chief Judge, INGRAHAM, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL and FAY, Circuit Judges.

BY THE COURT:

The per curiam opinion and decision of the panel of this court, dated January 3, 1977, 5 Cir., 544 F.2d 894, is adopted herewith as the opinion and decision of the en banc court.

*See also Wainwright v. Sykes,* —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (decided June 23, 1977).

Accordingly, the judgment of the district court in this matter is

REVERSED.

THORNBERRY, Circuit Judge, with whom RONEY, Circuit Judge, joins specially concurring:

Only because of the intervening decision in *Wainwright v. Sykes,* —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (decided June 23, 1977), of which the district court did not have the benefit, do I concur in the result reached by the Court En Banc.

JAMES C. HILL, Circuit Judge, specially concurring:

I concur in the result announced for the en banc court in the majority opinion. However, inasmuch as I feel that the court has grappled with issues unnecessary to the decision of this case, I concur without adopting all said for the en banc court.

When the question was asked by the prosecutor which elicited the fact that the petitioner-defendant had only recently returned from a stay in the state penitentiary, defense counsel's objection was so far off the mark as to amount to no objection at all.[1]

---

1. Q. How long had Jerry been home, Mrs. Nicholas?
   A. For about a month.
   Q. For about a month?

Nine questions later,[2] defense counsel moved for a mistrial. No proper objection to this testimony had been stated to the trial judge and certainly not at a time when the trial judge could have protected any right of the defendant sought to be preserved. Nevertheless, on his own motion, the trial judge, in his final instructions to the jury, told the jurors that they should not consider any prior incarceration of the defendant as having any bearing on his guilt or innocence of the crime presently charged.[3]

We are here concerned only with the constitutionality of the state court proceedings. *Rose v. Hodges*, 423 U.S. 19, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Smith v. Colman*, 528 F.2d 1362 (5th Cir. 1976). Had defense counsel ultimately brought the objection properly to the attention of the trial court, all that the Constitution could require would have been that the testimony be stricken and the jurors properly instructed to disregard it. In the exercise of his discretion, and on his own motion, the trial judge did all that the defendant could have expected the Constitution to have required him to do.

In the case of *United States v. Myers*, 329 F.2d 280 (3d Cir. 1964), the Third Circuit was confronted with a factual posture nearly identical to the case at bar. In *Myers*, evidence of the defendant's prior criminal record was admitted for purposes in addition to its bearing on the defendant's credibility. The trial judge initially refused to confine the evidence to its permissible use. Later, upon reflection, he reversed his ruling and gave the jury an instruction limiting the use of the evidence to its proper purpose.

In observing that the limiting instruction cured any previous error as to the use of the evidence and in noting the absence of any fundamental unfairness, the court held that the petition "does not raise a question of constitutional dimension and is not a proper subject for relief under federal habeas corpus." 329 F.2d at 284.

The instant case is more compelling in calling for reversal of the District Court for the failure of the petition to allege a claim of constitutional magnitude. Thus without evaluating the effect of the state's "con-

A. Yes.
Q. He arrived home sometime after April 20th, 1966?
A. He did.
Q. Where had he been?
MR. MOORE: Your Honor, we object to this unless she knows of her own personal knowledge.
THE COURT: I assume she'll testify of her own personal knowledge.
Q. Where had he been, Mrs. Nicholas?
A. He had been in the penitentiary.

2. Q. Where had he been, Mrs. Nicholas?
A. He had been in the penitentiary.
Q. He had not been at Carlsbad, then, with his father, had he?
A. Previously, he had been.
Q. He had gotten out of the penitentiary on the 20th of April, 1966—
MR. GREEN: Your Honor, the Prosecutor is testifying now.
THE COURT: It's leading and suggestive.
Q. Jerry didn't come home until sometime after the 20th of April, 1966, is that right?
A. That's right.
Q. And he had been down to Huntsville State Prison?
A. Right.

What's the first thing you said, Mrs. Nicholas, when the officer told you what Jerry had done?
A. He didn't say for sure that Jerry did it. He took both of my boys' pictures because he didn't know who had done it.
Q. Did you bring those pictures with you today?
A. No, sir, I didn't. He kept two of them and he brought my boy who is in the Marines picture back to me about three weeks later.
Q. I'll ask you to look through these pictures, if you would, Mrs. Nicholas, and see if you see Jerry's picture in any of these?
A. Yes.
Q. Which picture is this?
MR. MOORE: Your Honor, at this time, the Defense makes a motion for a mistrial due to the fact that the Prosecutor has brought out the fact that the Defendant was in the penitentiary.
THE COURT: Overruled.

3. "You are instructed in this case that certain evidence was admitted before you in regard to the defendant having been convicted of an offense other than the one for which he is now on trial. You are instructed that such evidence cannot be considered against the defendant as any evidence of his guilt, if any, in this case."

temporaneous objection" rule and without deciding whether a "deliberate bypass," *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), or an "inexcusable procedural default," *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (Powell, J. concurring) occurred or whether the petition fails to show "cause and prejudice," *Wainwright v. Sykes*, —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (decided June 23, 1977), I concur in the result reached by the majority.

TJOFLAT, Circuit Judge, with whom GOLDBERG and GODBOLD, Circuit Judges, join dissenting:

I

Following a not guilty plea, the petitioner, Jerry St. John, was convicted of armed robbery and sentenced to fifty years confinement in a Texas penitentiary. The state's case hinged on the testimony of the sole eyewitness to the crime—the victim. There was no physical evidence introduced to link the petitioner to the crime.

The reliability of the victim's identification of petitioner was seriously questioned both in cross-examination of the victim and through defense witnesses. In an attempt to bolster the state's case against petitioner, the prosecutor set out to portray him as an ex-convict. To this end, he succeeded in establishing through his cross-examination of petitioner's mother, Lois Nicholas, that petitioner had recently been released from a Texas penitentiary.[1] This evidence formed the basis of the state's closing argument, wherein the prosecutor exhorted the jury not to allow the ex-convict to go free.[2] It is the obvious prejudice that flowed from this successful trial tactic which lies at the foundation of petitioner's habeas corpus claim. I can find nothing in the proceedings before the jury that justified the prosecutor's presentation of the state's case in this way. The trial judge obviously thought it was prejudicial for petitioner to be characterized as an ex-convict; in his final charge to the jury, he *sua sponte* cautioned it to disregard the evidence of petitioner's previous incarceration.[3] No

---

1. Petitioner objected to the question that initially elicited the fact of prior incarceration on hearsay grounds. The objection was overruled. Petitioner did not move to strike the evidence, but he did move for a mistrial later during Mrs. Nicholas' cross-examination. See part III and note 12, *infra*.

2. Throughout his closing argument the prosecutor implied that the petitioner was guilty because of his recent "ex-con" status. At one point he urged the jury that:

    This is the kind of person we're dealing with here, this ex-con who is out of the penitentiary less than a month at the time that he pulled this robbery. (R. 115)

    He also used the fact of *recent* incarceration to propose a motive for the petitioner to have committed the crime:

    He may have been unemployed since the day he *got out of the pen, penniless the whole* time. (R. 116)

    The prosecutor then attempted directly to buttress the state's identification testimony by arguing that the way in which the crime was committed was consistent with the way an "ex-con" would commit a crime:

    . . . [A]nd keep in mind that this is an ex-con, he's been down there, this is no first offender that your're dealing with, he's been around these people and perhaps his mind is thinking, perhaps at the time he walked in

that store and pulled that pistol on that woman, he thought, "If I don't harm that woman —." (R. 117)

The prosecutor was suggesting that the petitioner as an experienced criminal was careful not to harm the victim so that if he were to be apprehended he would not have to face additional charges.

3. You are instructed in this case that certain evidence was admitted before you in regard to the defendant having been convicted of an offense other than the one for which he is now on trial. You are instructed that such evidence cannot be considered against the defendant as any evidence of his guilt, if any, in this case. (Supp. R. 6)

In my judgment, this instruction was far from complete. First, by implication it permitted the jury to consider the prior *conviction* in resolving issues other than guilt. Second, it failed to advise the jury that the prior *incarceration* was not to be considered for any purpose. With deference, I disagree with my Brother Hill's concurring opinion that, by giving the instruction, the trial judge satisfied the court's due process obligation to insure petitioner a fair trial.

cautionary instruction was given, however, regarding the prosecutor's repeated references, during his closing argument, to the petitioner's prior incarceration.[4]

This Court has repeatedly recognized the prejudice inherent in such evidence and has criticized the use of inflammatory devices such as those relied upon by the prosecutor in this case. *E. g., Railton v. United States*, 127 F.2d 691 (5th Cir. 1942). *Railton* recognized a "fundamental rule of criminal law that guilt of another offense cannot generally be proven to show guilt of the offense charged in the indictment." *Id.* at 692. In *Boyd v. United States*, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892), Justice Harlan observed for a unanimous court that "[p]roof of [other crimes] only tend[s] to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that they were wretches whose lives were of no value to the community . . . ." *Id.* at 458, 12 S.Ct. at 295. The prejudice to a defendant when a jury learns of his prior incarceration is a reality because "[i]t is logical to conclude, and very apt to be concluded, that because a man was dishonest once he will steal again." *Railton* at 693. The due process implications of such evidentiary use are not remote. *See Spencer v. State of Texas*, 385 U.S. 554, 569, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (Warren, C. J., concurring in part and dissenting in part); *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

No contention is made by the state in the case before us that the development and use of the petitioner's ex-convict status was proper. The Texas Court of Criminal Appeals which reviewed petitioner's conviction on direct appeal held that the fact of his

incarceration was not admissible because it was not relevant to any legitimate inquiry in the case.[5] The Texas court affirmed, however, finding that the petitioner waived this error by failing to make an appropriate objection to it at trial.

After exhausting state remedies, petitioner filed an application for a writ of habeas corpus in the Northern District of Texas. The district court concluded that it was not foreclosed from considering petitioner's constitutional claim, found that he had been prejudiced by the introduction of the evidence of prior incarceration, and granted the writ. A panel of this court reversed the district court's grant of the writ on the authority of *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), which was decided after the district court's order was entered. The en banc court has today adopted verbatim the per curiam opinion of the panel. In addition, the court cites *Wainwright v. Sykes*, —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), which was decided by the Supreme Court after the panel decision was handed down.

## II

The majority,[6] without referring to the opinion of the Texas Court of Criminal Appeals, also found that petitioner had failed properly to object to the reception of the prejudicial evidence of recent imprisonment at the time the evidence was introduced. Then, relying on *Williams* and *Sykes*, the majority applied the Texas contemporaneous objection rule to foreclose further consideration of the merits of petitioner's constitutional attack on his conviction in federal habeas corpus proceedings. In my opinion, neither *Williams* nor *Sykes* requires

---

4.  It cannot be determined from the record on appeal whether, pursuant to Texas practice, the closing arguments of the attorneys were held after the court's charge to the jury. If the instruction quoted in note 3, *supra*, was delivered prior to argument, the prosecutor's "excon" argument was made in blatant disregard of the spirit of the instruction. If the instruction followed the arguments, then it was clearly inadequate as it made no reference to the prosecutor's inappropriate comments.

5.  *St. John v. State*, 427 S.W.2d 862 (Tex.Cr. App.1968).

6.  My reference to the en banc majority opinion necessarily incorporates, of course, reference to the panel opinion, *St. John v. Estelle*, 544 F.2d 894 (5th Cir. 1977).

such a mechanical approach to the problem. Although these cases greatly diminish the vitality of the deliberate bypass standards of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), they do not stand for the proposition that the failure to comply with a state's contemporaneous objection rule necessarily bars full habeas review of the petitioner's constitutional claim. Rather, it is the extent to which the state's rule is grounded on legitimate state interests and operates in a manner consistent with a defendant's right to a fair trial that determines whether a federal habeas court need defer to it. Insofar as the purpose of the Texas contemporaneous objection rule is to encourage the presentation and resolution of constitutional issues at trial, it is valid. Where this purpose is nonetheless accomplished—as I believe it was in this case—a technical deviation from the rule does not give rise to the type of "inexcusable procedural default" which requires a federal habeas court's abstention from reaching the constitutional claim.

The majority's failure fully to analyze the implications of *Williams* and *Sykes* has led to two significant errors in its approach to this case. First, the majority inexplicably fails to accord any significance to the motion for mistrial, made by the petitioner shortly after the prosecutor had succeeded in placing the prejudice before the jury, other than to treat it as an isolated objection. My recital of the facts of this case and the ensuing discussion of what I see as the correct analysis will indicate that the mistrial motion carried its own procedural significance quite independent from the events which preceded it during the trial. Second, the majority's view of *Williams* and *Sykes* demonstrates a disturbing degree of deference to a state procedural rule without regard to its underlying purposes and without determining, where it is claimed that the rule has not been adhered to, whether those underlying purposes have nevertheless been fulfilled. I believe that a fair reading of *Williams* and *Sykes* not only discourages but in fact disallows the sort of deference which the majority has accorded the Texas contemporaneous objection rule.

I simply cannot square the majority's approach to this case with what I perceive to be the analysis called for by *Williams* and *Sykes*.

Broadly stated, *Williams* and *Sykes* speak to the issue of what a federal habeas court must do when it is faced with a constitutional claim the vitality of which is drawn into question by the application of a state's contemporaneous objection rule. To be sure, these cases acknowledge that a state's contemporaneous objection rule may be applied to deny a petitioner, who has not complied with it, habeas review. The traditional purpose of the contemporaneous objection rule has been to implement a policy that errors occurring during the course of trial ought to be avoided by the timely presentation of objection to the trial judge in the first instance. The Supreme Court has instructed, in *Williams* and *Sykes*, that where the claim is made that the contemporaneous objection rule bars a petitioner's right to question state trial error, the federal habeas court's initial inquiry is to determine whether the alleged error was drawn to the attention of the trial judge in a timely fashion. If it is established that the issue was seasonably and squarely presented to the trial judge, then the rule cannot operate to bar habeas review of the petitioner's claim. If the issue was not so presented, then the court must determine whether the petitioner has demonstrated that the error is sufficiently prejudicial to warrant a new trial and that he has good cause for not having presented a contemporaneous objection.

My opinion is that in this case the en banc court has failed to ask either of these questions. Had it done so, it would have concluded that the prejudicial evidence issue was timely and fully raised, and was in fact disposed of, at trial. Consequently, the issue is properly before this court. The purpose of this dissent is to make the inquiry mandated by *Williams* and *Sykes*; when that inquiry is concluded, it will be clear, I submit, that the writ should issue.

## III

The first witness called by the defense was the petitioner's step-sister, Sharon Nicholas. In her direct testimony she described what the petitioner was wearing on the morning of the robbery. Her description conflicted with the one established in the state's case. Although this was the focus of her testimony, the seventh question posed by the prosecutor in cross-examination was "[h]ow long had Jerry been living at the house on Statler Street?", to which the witness replied, "[f]or a little over a month, I think." The following exchange proceeded:

Q. In other words, he had only been home about a month, is that correct?

A. Yes, sir.

Q. How long had Jerry been gone from home? (R. 34).

At that point defense counsel objected to the line of questioning as being irrelevant—having no bearing on the case. The objection was overruled and defense counsel asked the judge to note his exception. The examination continued:

Q. How long had Jerry been gone from home, Sharon?

A. I don't know exactly how long. He had been staying with his father in Carlsbad, New Mexico.

Q. Is that Carlsbad, New Mexico?

A. That's right.

Q. He'd been with his father?

A. Uh-huh.

\* \* \* \* \* \*

Q. I'm not talking about his name now, but I'm talking about the fact that Jerry was staying with him, or did someone tell you that that's where Jerry was staying?

A. Well, that's what I knew.

\* \* \* \* \* \*

Q. Did your mother tell you that was where Jerry was staying, Sharon?

A. That's what she told me when Jerry wasn't there.

Q. That's right. Whenever Jerry wasn't home, your mother told you that he was staying with his dad out in Carlsbad, isn't that correct?

A. That's right.

Q. You never went out to Carlsbad to see him with his dad, though, did you?

A. No.

Q. Jerry hasn't lived at home much, has he, Sharon?

A. Well, when we lived out in Snyder, Texas, he lived there with us for awhile and then he went to see his father. (R. 34–36).

\* \* \* \* \* \*

Thus, the court permitted the prosecutor to pry into the petitioner's whereabouts during the period of time the prosecutor knew [7] the petitioner was in prison. It was at this point in the trial that the prosecutor began his deliberate efforts to expose the fact that the petitioner had recently been incarcerated.

The defense next called the petitioner's mother, Lois Nicholas. She testified that, to her knowledge, the petitioner did not possess clothing similar to that which the state claimed was worn by the robber. She also revealed various economic resources available to her son, thus rebutting the state's asserted motive behind the robbery (i. e., the petitioner's need of immediate funds at the time of the robbery). On cross-examination, the prosecutor promptly resumed his strategy of uncovering the fact of petitioner's recent incarceration by inquiring as to the petitioner's whereabouts at the time he was in the penitentiary. The first question posed in the prosecutor's cross-examination was "[h]ow long had Jerry been home, Mrs. Nicholas?" This exchange followed:

A. For about a month.

Q. For about a month?

A. Yes.

Q. He arrived home sometime after April 20th, 1966?

---

**7.** That the prosecutor knew these facts is expected, where, at the punishment stage of this bifurcated trial, he intended to and did use the fact of prior incarceration for the purpose of enhancing the petitioner's sentence under Texas law.

A. He did.

Q. Where had he been? (R. 44).

Defense counsel immediately objected to the question on hearsay grounds. The objection was overruled and the prosecutor continued:

Q. Where had he been, Mrs. Nicholas?

A. He had been in the penitentiary.

Q. He had not been at Carlsbad, then, with his father, had he?

A. Previously, he had been.

Q. He had gotten out of the penitentiary on the 20th of April, 1966—

MR. GREEN: Your Honor, the Prosecutor is testifying now.

Q. Jerry didn't come home until sometime after the 20th of April, 1966, is that right?

A. That's right.

Q. And he had been down to Huntsville State Prison?[8]

A. Right.

Q. What's the first thing you said, Mrs. Nicholas, when the officer told you what Jerry had done?

A. He didn't say for sure that Jerry did it. He took both of my boys' pictures because he didn't know who had done it.

Q. Did you bring those pictures with you today?

A. No sir, I didn't. He kept two of them and he brought my boy who is in the Marines picture back to me about three weeks later.

Q. I'll ask you to look through these pictures, if you would, Mrs. Nicholas, and see if you see Jerry's picture in any of these?

A. Yes.

Q. Which picture is this? (R. 44–46).

\* \* \* \* \* \*

8. This question and the two immediately preceding it further demonstrate that the prosecutor did not just stumble upon this line of questioning. He knew *in advance* that petitioner was in Huntsville State Prison, and was released on April 20, 1966.

9. First, it is said that counsel could have kept the prejudicial evidence from the jury altogether by objecting on proper grounds when Mrs. Nicholas was initially asked where petitioner

At this juncture, a few short questions after the penitentiary evidence had been deliberately elicited, the petitioner moved for a mistrial. The court perfunctorily denied the motion.

IV

With the first step of the *Williams-Sykes* inquiry in mind, the majority has determined that this petitioner did not make a timely presentation to the state trial judge of the error occasioned by the admission of the highly prejudicial evidence of his recent imprisonment. Thus, the majority concludes, the petitioner is now foreclosed from obtaining a new trial because he inexcusably neglected to comply with the Texas contemporaneous objection rule. Inferentially, the majority opinion points to two operations of the rule in this case: one which directly operates as an inexcusable procedural default, the other which indirectly so operates. The direct operation results from the fact that defense counsel had *two* opportunities either to avoid or to reduce the damage done by the prejudicial evidence, yet did not utilize them.[9] The indirect operation, I must assume, is premised upon the notion that because the petitioner did not object to the question, move to strike the answer, and request a limiting instruction, the petitioner in some way forfeited his right to move for a mistrial at a later stage of the proceeding.

In the majority's view, the contemporaneous objection rule directly operated to work an inexcusable procedural default. The majority observes that "a timely objection could have prevented the introduction of this evidence"[10] (of imprisonment). This, of course, begs the question of whether petitioner's motion for mistrial promptly

had been prior to his arrival at home in April. Second, the majority states that once the question was answered, disclosing petitioner's recent imprisonment, counsel could have removed "some of the prejudicial effect" of the answer by moving to strike it or by requesting a limiting instruction. Counsel did neither.

10. *St. John*, 544 F.2d at 895.

alerted the trial judge to the problem of according petitioner a fair trial before the jury *after* it had been exposed to a very damning piece of evidence. It cannot be gainsaid that a well-articulated objection—calling the court's attention to the prosecutor's illicit objective in pressing petitioner's step-sister and mother about his recent whereabouts—might have aborted the line of questioning and the consequent error. But this does not address the question of a defendant's remedy once evidence of great prejudice has been introduced. The majority also observes that "at no time did counsel ask that the evidence be stricken or that a limiting instruction be given" and that "a motion to strike or to give a limiting instruction could have cured some of the prejudicial effect." [11] To me, this observation implies that counsel's objection to the prejudicial evidence, *after* the damage had been done in the eyes of the jury, would have been timely and appropriate. Such an objection, I submit, was made in the form of petitioner's motion for mistrial.

The majority refers to the motion for mistrial as an "objection" which came four questions too late. To the extent that defense counsel's *explicit* motion for mistrial can be construed as a mere objection to the court's reception of inadmissible evidence, it did come late, perhaps too late to enable petitioner to preserve the constitutional error he asserts in these proceedings. The motion for mistrial, however, was not a mere objection to the evidence. Instead, the motion plainly sought the termination of the trial [12] and was timely in its own right. Yet the majority fails to consider the motion's independent significance. By treating petitioner's *motion for mistrial* as a "belated objection" to the state's injection of the fact of imprisonment into the proceedings, the majority erroneously perceives as the same: (1) the roles of an objection preceding the introduction of prejudicial evidence and of a subsequent motion to strike

or for a limiting instruction and (2) the role of a motion for mistrial. The roles are clearly *not* the same; and it is the majority's failure to distinguish between them that has, in my opinion, contributed to the result the court has reached today.

The majority's treatment of petitioner's mistrial motion as a mere objection is by no means the most disturbing aspect of its analysis, however. The majority quite clearly implies that the merits of this petitioner's mistrial motion were somehow affected by his failure to make proper contemporaneous objection to the initial introduction of severely prejudicial evidence. Once this step is taken, it seems to me that the majority has accorded the contemporaneous objection rule a form of indirect significance which is both short-sighted and illogical. An inescapable corollary of the majority's position is that where a state provides a procedural device for curing prejudice and thereby permitting the continuation of the trial, a defendant *must* avail himself of that device as a precondition to a subsequent (and contemporaneous) mistrial motion made when it becomes apparent that the prejudice cannot be cured.

As for the majority's suggestion that petitioner should have moved to strike the evidence or obtained a curative instruction in order to alleviate what it characterizes as *some* of the prejudice, I must confess that I have great difficulty in perceiving any utility in advocating, much less requiring, the use of such a procedure in the conduct of a criminal jury trial. In fact, in the present state of the art of the practice of law, a defense lawyer who followed such a procedure and acquiesced in the continuation of a trial tainted with lingering prejudice might well be condemned as incompetent. Counsel would plainly have the duty to move for a mistrial to ensure that the prejudice would not lead to his client's conviction, and that is precisely what petitioner's attorney

11. *Id.*

12. The precise words counsel used are:
    Your Honor, at this time, the defense makes a motion for a mistrial due to the fact

that the prosecutor has brought out the fact that the defendant was in the penitentiary. (R. 88–89)

did in this case. In terms of timeliness, once the prosecutor had succeeded in placing the prejudicial evidence before the jury, the motion for mistrial was made. Yet the majority has applied the Texas contemporaneous objection rule in a fashion which strips the motion of its efficacy. No analysis is offered to justify this result and, therefore, I can only speculate as to the reasoning underlying this utter disregard of the motion as a legitimate procedural device to abort a criminal jury trial which should not be continued. I think it safe to say that the majority did not consider the motion untimely, for it would have been impossible for petitioner's counsel to have moved for a mistrial on grounds of prejudice *before* the prejudice became manifest. Thus, assuming that the motion was timely and proper grounds for a mistrial were advanced—and they were—it must be that the motion was ineffectual because of counsel's failure earlier in Mrs. Nicholas' cross-examination to make the other objections the majority finds to be lacking: a proper objection to the question which elicited the fact of prior imprisonment (the majority treated petitioner's hearsay objection as a nullity); a motion to strike the prejudicial testimony or a request for a limiting instruction.[13]

To place such conditions on a motion for mistrial, I submit, cannot logically be justified. If counsel must meet such conditions in order to protect his right to move for a mistrial when faced with the trial strategy presented here, the following sequence of events would have to occur: (1) defense counsel objects on relevancy grounds to the prosecutor's question which seeks to elicit the evidence of prior imprisonment; (2) the trial judge overrules the objection and allows the evidence to come in; (3) defense counsel moves to strike the evidence on grounds of relevancy and prejudice and requests a limiting instruction; (4) the motion

is denied; (5) counsel moves for a mistrial on the ground that the prejudice inherent in the evidence cannot be removed from the jury and that a fair trial will not result. When the prejudicial evidence is placed before the jury and counsel moves to strike it or requests a cautionary instruction, he tacitly admits, I suggest, that the court's intervention can eliminate the prejudice so as sufficiently to ensure a fair trial for his client.

Where, as here, some prejudice will remain notwithstanding the court's efforts to cure the error, counsel is left with a Hobson's choice under the majority's application of the Texas rule. On the one hand, if he moves to strike the evidence or for an instruction, or both, and either or both are granted, can he then immediately ask for a mistrial? If so, what was the utility of the court's statement to the jury a moment earlier instructing it to disregard the challenged evidence? To me, the answer is obvious. Counsel cannot run the risk of having the trial court hold him to the position counsel assumes in moving against the evidence, *i. e.*, that the prejudice can be removed by appropriate instructions. Surely the court would then be justified in concluding that a cautionary instruction would suffice to eliminate the prejudice. On the other hand, to avoid the unfortunate consequence of continuing the trial with some prejudice still remaining with the jury, it seems to me that competent counsel must adopt the alternative choice: abandon the thought of moving to strike or for an instruction and move for a mistrial instead. If it is clear that this alternative must be pursued to protect the accused, then it is the intellectually correct one. Yet the Texas rule would have the court deny the motion for mistrial because it was not preceded by a procedural device that counsel could not in good conscience employ.

13. It is not clear from the majority opinion whether *both* procedural devices—objection and motion to strike—were necessary under Texas law in order to preserve petitioner's claim of error. One could read the opinion as holding that the invocation of *either* device is sufficient. As I have pointed out earlier in the text of part IV, specifically the text accompanying note 11, *supra*, the majority intimates that a motion to strike or for a cautionary instruction would have been timely and appropriate, standing alone, to preserve the error.

The Supreme Court has strongly condemned the notion that a trial is a "sporting event," with a "poker game" approach, where gamesmanship is at a premium. *See Williams v. Florida,* 399 U.S. 78, 82, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1969); Brennan, *The Criminal Prosecution: Sporting Event or Quest for Truth?* 1963 Wash.U.L.Q., 279, 292. This notion is the antithesis of the philosophy which lies at the heart of the American Bar Association Standards for Criminal Justice. As the foregoing analysis demonstrates, the Texas contemporaneous objection rule became a rule of gamesmanship in this case, not a rule to facilitate the search for truth. I do not overlook the fact that Texas is entitled to promote the resolution of constitutional issues at trial by employing the contemporaneous objection rule. For obvious purposes of judicial economy, the state has a valid interest in seeking to avoid or cure trial error short of aborting the trial. The fact, however, that Texas also authorizes the motion for mistrial demonstrates its acknowledgement that not all trial error can be avoided by contemporaneous objection addressed to the introduction of inadmissible evidence. For the situation where an objection may be ineffective to protect a defendant's fair trial rights, the state provides for the mistrial procedure. In permitting a defendant to move for a mistrial the state accommodates both the defendant's fair trial rights and the state's interest in not being barred, on jeopardy grounds, from retrying the defendant. In the case at hand, the purpose of the contemporaneous objection rule—to avoid having to terminate the trial—could no longer be served once the prejudice manifested itself. The state was bent on injecting prejudice into the trial. Any prosecutor realizes that the greater the prejudicial impact of his evidence, the more he must rely on surprise to place it before the jury. The prosecutor here was not about to advise petitioner, or the trial judge, of his plan prior to trial. His stealthy course of action, coupled with the high degree of spontaneity characteristic of criminal jury trials, contributed heavily, in my opinion, to defense counsel's inability to prevent the prejudice from occurring. The state's present position, that the petitioner had ample time to prevent the development of the prejudice, is quite inconsistent with the strategy the state adopted at trial, which, to be successful, depended upon petitioner's practical inability to make timely objection. Faced with this chameleon-like behavior by the state and a record that demonstrates *incurable* prejudice of the state's deliberate creation, the majority nevertheless concludes, as a matter of law, that the petitioner could not properly invoke the mistrial procedure without having first attempted to remove *some* of the prejudice by moving to strike the evidence or for a cautionary jury instruction.

## V

As I have already demonstrated, the majority's application of the Texas contemporaneous objection rule is patently illogical. Furthermore, I submit that it runs counter to the clear rationale of the very cases— *Williams* and *Sykes*—upon which the majority purports to rely.

In part II, *supra,* I pointed out that *Williams* and *Sykes* direct that a federal habeas court, when faced with a claim of inexcusable procedural default, must inquire whether the state rule in question has been applied to further a legitimate state interest. Insofar as the validity of the Texas contemporaneous objection rule derives from its role in preventing the abortion of a trial, that role could no longer have possibly been served once the state incurably prejudiced the petitioner's case before the jury. The only means of curing the prejudice which permeated this petitioner's trial was to abort the proceedings. Since the state at that point had no legitimate interest in insisting upon carrying the trial to a verdict, the majority, in asserting that the petitioner should have gone through the predicative sequence of objections and motions to strike, is "giving effect to the contemporaneous objection rule for its own sake [and requiring] 'resort to an arid ritual of meaningless form.'" *Henry v. Mississippi,* 379 U.S. 443, 449, 85 S.Ct. 564, 568, 13 L.Ed.2d 408 (1965).

In the course of its analysis, the *Sykes* Court cited *Henry* to support the proposition that a federal habeas court's inquiry must subsume an examination of the context in which a state procedural rule is applied. *See* 97 S.Ct. at 2504. As *Henry* itself states,

> [i]n every case we must inquire whether the *enforcement* of a procedural forfeiture serves such a [legitimate] state interest. If it does not, the state procedural rule ought not be permitted to bar vindication of important federal rights. 379 U.S. at 447, 85 S.Ct. at 567 (emphasis added) (footnote omitted).

Under *Henry*, then, a state may not insist on compliance with a procedural rule unless the rule *is applied* to serve a legitimate state interest. Contrary to the majority's position, there can be no logical—much less legitimate—state interest in applying the rule to require a defendant to employ a litany of procedural devices in order to preserve the right to move for a mistrial where resort to such devices cannot cure the prejudice in the case. Once the prejudice had

been injected into the trial of this case, the only way in which it could have been cured was by the declaration of a mistrial.[14]

## VI

In conclusion, the first step of the *Williams-Sykes* inquiry into the operation of the Texas contemporaneous objection rule in this case reveals that the consitutional error before us in this habeas corpus appeal was seasonably and squarely presented at the trial in state court. Accordingly, the second step of the *Williams-Sykes* inquiry, whether petitioner has shown shown cause for failing to present the error to the state trial court, is inapplicable.[15]

Because I would grant the writ, I respectfully dissent.

**14.** Aside from the underlying rationale of *Williams* and *Sykes* which I have already discussed, those cases say very little about the specific point during a trial at which prejudicial error must be called to the attention of the trial judge in order to preserve the potential for habeas review. Rather, these cases require only that the state court be presented with alleged error at some point during the trial. The majority's approach to this timeliness issue hinges—wrongly, I think—upon the *form* of the particular device used to raise the issue; in other words, if a belated objection is made where a motion to strike would be timely, or vice versa, then an error of constitutional magnitude may be deemed abandoned. The majority takes this approach in the face of language in *Williams* and *Sykes* which, I think, militates against such a restricted view of timeliness. In each of those cases, a device existed which would have prevented the error altogether. In *Williams*, the prejudice was manifest before the jury was empaneled. The petitioner in that case could have objected to standing trial in prison garb well before he was actually prejudiced, yet the Court found an inexcusable procedural default only after it noted that no such objection was made "either before or *at any time during the trial*." 96 S.Ct. at 1695 (emphasis added). In *Sykes*, the petitioner could have requested a *Jackson v. Denno* hearing at several stages prior to the commencement of

trial, yet the Court found a default in his failure to challenge the voluntariness of his confession "at trial or not at all." 97 S.Ct. at 2506. To me, these cases simply do not square with the majority's formal and hypertechnical approach to timeliness. The timeliness question must be a pragmatic one: was this issue squarely brought before the trial judge at some point during the trial, and did he have a chance to rule on the issue? When I examine the record in this case with those questions in mind, I readily conclude that the petitioner's mistrial motion was timely. The motion was made a scant four questions after the prosecutor had terminated his prejudicial line of questioning.

**15.** One last criticism of the result reached by the majority must be made. The district court, in granting the writ, expressly reserved a second claim raised in petitioner's habeas petition. That claim asserts that the state improperly introduced evidence of a prior juvenile conviction at the punishment stage of the trial. Both the panel and the en banc court, in reversing the grant of the writ, have not remanded the case to the district court for consideration of petitioner's second claim. I submit that, to the extent that the majority's opinion operates to preclude petitioner's reapplication for habeas relief on his second claim, the result is truly a miscarriage of justice.